L. Trevor Grimm, State Bar No. 186801
Michelle B. Ghaltchi, State Bar No. 242482
MANNING & MARDER
KASS, ELLROD, RAMIREZ LLP
15th Floor at 801 Tower
801 South Figueroa Street
Los Angeles, CA 90017
Telephone: (213) 624-6900
Email: ltg@mmker.com, mbg@mmker.com

Attorneys for Defendants
COUNTY OF LOS ANGELES, DEPUTY CRISTINA MARTINEZ, DEPUTY CASEY CHESHIER and DEPUTY ADAM PRUITT

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES (JIM) OWENS,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF LOS ANGELES, DEPUTY MARTINEZ, DEPUTY SHESHIRE, DOES 1-10, inclusive,<br><br>Defendants. | Case No.: CV08-07116 DMG<br><br>**DECLARATION OF PATRICK BEARSE IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION OF ISSUES**<br><br>Trial Date:   October 4, 2010<br>PTC Date:    September 27, 2010 |

I, Patrick Bearse, declare as follows:

1.  I am not a party to the above-entitled lawsuit. The following facts are of my personal knowledge, and if called as a witness, I could competently testify thereto.

2.  I have been employed by the Los Angeles County Sheriff's Department ("LASD") since 1986.

3.  I currently hold the rank of Lieutenant with the Sheriff's Department. My current assignment is Operations Lieutenant at Special Enforcement Bureau. In December 2007, I was assigned as a Lieutenant to Lennox Station.

4.  In my role as a Lieutenant, I am responsible for investigating citizen complaints and determining whether the specific incidents conform to the Sheriff's

1

Department's Manual of Policies and Procedures and whether such incidents are handled "within policy," meaning that such incidents comply with the Department's policies. I am further responsible for determining whether supervision in each of the instances of alleged misconduct acted appropriately and within the standards and guidelines established by the Sheriff's Department and whether supervisors acted to ensure the behavior of subordinate employees was within policy.

5.  On December 16, 2007, Nancy English filed a personnel complaint, via telephone, with the Lennox Sheriff's Station alleging that deputies detained Mr. Owens for no reason, Mr. Owens should have been released when they learned he lived at the location, and that she saw Martinez search Mr. Owens and kick his legs apart. As part of my duties, I investigated this complaint. Attached hereto and incorporated by reference as Exhibit A is a true and correct copy of the Watch Commander's Service Comment Report.

6.  After interviewing Ms. English, Mr. Owens, Deputy Cheshier, Deputy Pruitt and Deputy Martinez and reviewing all available information in this case, it was determined that the deputies' conduct on December 15, 2007, with regards to the incident involving Mr. Owens was within the Sheriff's Department's Manual of Policies and Procedures. There were several discrepancies and conflicting statements between plaintiff and Ms. English's version of the events, which were inconsistent in and of themselves. Further, it was determined the deputies did not violate any rules, regulations or laws. Supervision on duty at the time of the incident acted prudently and within the Department's policies and procedures. On January 4, 2008, I reported my findings in a memorandum to Captain Kevin Goran. There was no discipline imposed, and the complaint was closed. Attached hereto and incorporated herein by reference as Exhibit B is a true and correct copy of the January 4, 2008, memorandum to Captain Goran.

7.  The Los Angeles County Sheriff's Department has policies and procedures regarding: (1) use of force; (2) reporting, honesty in reporting, and

investigation of incidents; (3) investigation of misconduct; (4) hiring, supervision, discipline and training of personnel; (5) citizens' constitutional rights. There is no Department policy or procedure authorizing: unreasonable searches or seizures; inadequate, fraudulent or misleading investigation of incidents; inadequate or fraudulent investigation of officer misconduct; unreasonable or unconstitutional uses of force; inadequate or derelict supervision, training or discipline of officers; interference with citizens' constitutional rights.

8. At no time during my tenure with the LASD, or at anytime to my knowledge, did it maintain, enforce, tolerate, permit, acquiesce in or create any customs, policies or practices of subjecting citizens to unreasonable searches and seizures, denying citizens due process of law, denying citizens of equal protection under the law or depriving citizens of liberty without reasonable suspicion and probable cause.

9. The LASD trains all of its deputies how to effect searches and seizures in compliance with the Fourth Amendment to the United States Constitution. This training is in accordance with the guidelines promulgated by the California Commission on Peace Officer Standards and Training ("P.O.S.T"). P.O.S.T. was established by the Legislature in 1959 to set minimum selection and training standards for California law enforcement. Before being assigned to patrol, each deputy is required to attend 18 weeks of training at the Los Angeles County Sheriff's Academy. At the academy, all deputies undergo both classroom and situational training so that they are knowledgeable about what constitutes reasonable suspicion to detain, and probable cause to arrest, citizens who violate the law. Approximately 16 hours of the academy training is devoted to laws relating to searches and seizures. P.O.S.T requires a minimum of 12 hours of training in this area. Upon their first field assignment, each new deputy is assigned for a period of six months to an experienced field training officer who provides further training in how to effect lawful detentions and arrests.

10. At no time during my tenure with the LASD, or at anytime to my knowledge, did it maintain, enforce, tolerate, permit, acquiesce in or create any customs, policies or practices of selecting, hiring or retaining officers known to have propensities for using excessive force or committing other misconduct.

11. At no time during my tenure with the LASD, or at anytime to my knowledge, did it maintain, enforce, tolerate, permit, acquiesce in or create any customs, policies or practices of failing to train, supervise or control its officers.

12. At no time during my tenure with the LASD, or at anytime to my knowledge, did it maintain, enforce, tolerate, permit, acquiesce in or create any customs, policies or practices of failing to discipline its officers who committed misconduct.

13. At no time during my tenure with the LASD, or at anytime to my knowledge, did it maintain, enforce, tolerate, permit, acquiesce in or create any customs, policies or practices of condoning, encouraging or ratifying misconduct on the part of its deputies, or of leading its deputies to believe that there would be no adverse employment consequences if they committed misconduct.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

14. All LASD deputies are provided with a policy manual which specifically sets forth the grounds for discipline, and the nature and extent of that discipline. Unlawful searches and/or seizures are grounds for discipline at the LASD, and its deputies are informed of that fact. When citizens complain about misconduct, including unlawful searches and seizures, by LASD deputies, those complaints are investigated and, if warranted, deputies are disciplined.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 9th day of July, 2010, at Los Angeles, California.

# EXHIBIT "A"

# LOS ANGELES COUNTY SHERIFF'S DEPARTMENT  205595
## WATCH COMMANDER'S SERVICE COMMENT REPORT

**Received:**
- [ ] Mail
- [ ] In Person
- [x] Telephone
- [ ] 800 Line
- [ ] E-Mail/Fax

Bureau/Station/Facility Receiving Comment: **FOR I LNX**
Report Date: **12-26-07**
URN: 
SC: **2211646**
IAB#:

[x] **Personnel Complaint**

- [ ] Commendation
  - Application to Duties
  - Commendable Restraint
  - Exemplary Conduct
  - Tactical Excellence
- Criminal Conduct (All copies to Unit Cmdr)
  - [ ] Discourtesy
  - [ ] Dishonesty
  - [ ] Unreasonable Force
  - [ ] Improper Tactics
  - [x] Improper Detention, Search or Arrest
- [ ] Neglect of Duty
- [ ] Operation of Vehicles
- [ ] Off Duty Conduct
- [ ] Harassment
- [ ] Discrimination
- [ ] Other
- [ ] **Service Complaint**
  - Policy/Procedures
  - Response Time
  - Traffic Citation
  - Other

### Reporting Party Information
Last Name: **ENGLISH**  First Name: **NANCY**  Middle Name: 
Home Phone: **310-227-6046**  Work Phone: **310-318-0658**  Third Party: [x] Yes [ ] No
Residence: **401 INDIANA ST #1**  City: **EL SEGUNDO**  Zip: **90245**  Sex: **F**  Age: **52**  Race: **W**
Present at Incident: [x] Yes [ ] No

Has any member of this Department attempted to discourage you... [ ] Yes [x] No

### Involved Party Information (If not Reporting Party)
Last Name: **OWENS**  First Name: **JAMES**  Middle Name:
Home Phone: **310-871-3834**  Work Phone:
Residence: **4407 169TH ST**  City: **LAWNDALE**  Zip: **90260**  Sex: **M**  Age: **44**  Race: **W**

### Contact/Event Information
Date: **12/16/07**  Time: **2330**  City or Station Area: **LENNOX**  FID: **0334**
Location/Address: **409 169TH ST**

Synopsis of Contact/Event:
THE R/P SAID THAT HER BOYFRIEND I/P OWENS WAS DETAINED AND HARRASSED BY THE DEPUTIES. HE WAS NOT DOING ANYTHING WRONG AND DEPUTIES REINJURED HIS KNEE WHILE SEARCHING HIM.

Was a Supervisor Present? [ ] Yes [x] No

### Involved Employee Information
Last Name: ~~~~  First Name: **Cheshier, Casey**
Employee No: **473573**

### Watch Commander (Person Completing Report)
Print Full Name: **DOMINIC VALENCIA**  Employee No: **274489**

WHITE — PTD Hdqtrs    CANARY — Unit Commander    PINK — Division Hdqtrs    GREEN — Reporting Party

Complainant Advisory

COLA0206

6

# LOS ANGELES COUNTY SHERIFF'S DEPARTMENT
## ADDITIONAL INVOLVED EMPLOYEES CONTINUATION SHEET

Bureau/Station/Facility: Lennox Station

SCR/EIC#: 205596

### Additional Involved Employee Information

| Last Name | First Name | Middle Name | Work Phone | Sex | Race | Age |
|---|---|---|---|---|---|---|
| Watt | Adam | | | | | |

Unit of Assignment:  Height:  Weight:

Employee #: 466357  Work Assignment: — EM Shift / Day Shift / PM Shift / Regular Shift / O.T. Shift / Off Duty

| Last Name | First Name | Middle Name | Work Phone | Sex | Race | Age |
|---|---|---|---|---|---|---|
| Martinez | Christina | | | | | |

Unit of Assignment:  Height:  Weight:

Employee #: 411267  Work Assignment: — EM Shift / Day Shift / PM Shift / Regular Shift / O.T. Shift / Off Duty

(Remaining employee entries blank)

SH-R-437B-Rev 10/98

COLA0207

7

# RESULT OF SERVICE COMMENT REVIEW

**SC# (PDE)** 2211646     **SCR#** 205595

- ☐ Commendation
- ☐ Service Complaint
- ☒ Personnel Complaint
- ☐ Department Investigation
- ☐ Unit Level Investigation
- IAB #

## FINAL REVIEW DISPOSITION

- ☐ **Commendation Public** (Received from individual members of the public, business, corporations, associations, etc.)
- ☐ **Commendation Professional** (Government entities expressing appreciation for professional services provided by our personnel.)
- ☐ **Review Comp - Service Only - No further action**
- ☒ **Employee conduct was reasonable** (Facts show that the employee's actions in this incident were in compliance with established procedures, polices, guidelines or training.)
- ☐ **Appears employee conduct could have been better** (The employee's actions were in compliance with established procedures, Policies, guidelines. Complaint could have been minimized if the employee had employed tactical communication principles or some common sense.)
- ☐ **Employee conduct should have been different** (Employee's actions in this incident were not in compliance with established procedures, policies, guidelines, or training. W/C will take corrective action.)
- ☐ **Unable to make a determination** (Reporting party's word against an employee's word. The inquiry reveals insufficient evidence to corroborate the version of facts presented by either person. Unable to contact the complainant, and no indication of misconduct is present from other sources; or we are unable to identify the personnel involved.)
- ☐ **Conflict Resolution** (Watch Commander/Supervising Lieutenant was able to use conflict resolution techniques to respond to the complaint.)

## FINAL NOTIFICATIONS/PROCESSING

| | |
|---|---|
| Date WSCR Received by Unit: | 12/17/07 |
| Date Acknowledgment Letter sent to Reporting Party: | 12/20/07 |
| Date Investigation Completed: | 01/04/08 |
| Date Final Outcome Letter Sent to Reporting Party: | 01/16/08 |
| Date Completed Review Form provided to Employee: | 01/16/08 |

Provided by: Mercado, M    Emp #: 273474

### ATTACHMENTS INCLUDED

- ☒ Original WCSCR
- ☐ Watch Commander's Memo
- ☒ Acknowledgement Letter to Reporting Party
- ☒ Final Outcome Letter
- ☐ Audio tapes   Quantity: ___
- ☐ Video Tapes   Quantity: ___
- ☐ Other: ___ (Please Specify)

---

☐ **Watch Commander's Discretion: Service Review Terminated**
- ☐ Previously exonerated complaint
- ☐ Under the influence - re-contacted
- ☐ Irrational/unstable/diminished capacity
- ☐ Third party - no witnesses/aggrieved uncooperative
- ☐ W/C personal knowledge of false complaint

### FINAL REVIEW DISPOSITION

Unit Commander (Print Name): Kevin A. Goran
Signature: *Kevin Goran*   Date: 1/14/08

Division Commander (Print Name): Ralph W. Martin
Signature: (CONTENTS NOTED RW MARTIN)   Date: 2-6-08

**FOR DISCOVERY UNIT USE ONLY**
Date Received by Discovery Unit: [illegible]
Reviewed By: [illegible] Date: 3/31/08
Entered into [illegible] By: [illegible] Date: [illegible]
Comments: [illegible handwriting]

### EXONERATION

- ☐ The employee was not personally involved or in any way connected to the incident(s) or allegation in question.
- ☐ The allegation giving rise to the investigation was demonstrably false and brought in demonstrable bad faith or by virtue of an obvious and demonstrable mental disease or defect.
- ☐ The allegation in question, broadly construed and even if true, would not in any circumstance constitute a violation of law or Department policy, rule, or procedures and is not otherwise censurable.

It is requested that ___ a subject, be deemed exonerated. Emp. # ___

Division Chief (Print Name): ___
Signature: ___ Date: ___

Rev. 7-30-03

8

COLA0208

EXHIBIT "B"

761551N25A - SH - AD - 32A (2/72)

COUNTY OF LOS ANGELES
# SHERIFF'S DEPARTMENT
"A Tradition of Service"

OFFICE CORRESPONDENCE

DATE: January 4, 2008
FILE NO. WCSCR #205595

FROM:  PATRICK BEARSE, LIEUTENANT      TO:  KEVIN A. GORAN, CAPTAIN
       LENNOX STATION                        LENNOX STATION

SUBJECT: WCSCR #205595

REPORTING PARTY:  Nancy English
                  421 Indiana Street #1
                  El Segundo, CA., 90243

INVOLVED PARTY:   James Owens
                  4147 W. 169th Street
                  Lawndale, CA. 90260

INVOLVED DEPUTIES: Deputy Casey Cheshier #473573
                   Deputy Adam Pruitt #466357
                   Deputy Cristina Martinez #471267

## ALLEGATION

R/P Nancy English complained that Deputies Cheshier and Pruitt detained her boyfriend, I/P James Owens, for no reason. During the detention, deputies searched I/P Owens and re-aggravated an existing knee injury that he had.

## INVESTIGATION

### STATEMENTS

### R/P Nancy English

Nancy English told me that she went outside her house because she heard I/P Owens call her name. When she went outside, she saw a deputy, who she named as Deputy Martinez, search I/P Owens and place him in the back seat of a patrol vehicle. She said that a male deputy spoke to her while the other deputy ran I/P Owens on the MDT. She spoke with the male deputy to find out why I/P Owens was being stopped. The male deputy explained to her that there was a call for service on the street regarding several males acting suspiciously. R/P English was upset because the deputies should not have detained I/P Owens especially when they found out he lived at the location. R/P English alleged that she saw Deputy Martinez searching I/P Owens and that she saw Deputy Martinez kick I/P Owen's legs apart as she searched him.

9

WCSCR #205595                    -2-                    January 4, 2008

When I told R/P English that Deputy Martinez is a female, she told me that there was not any female deputies at the incident. R/P English was almost certain that the name of the deputy that searched I/P Owens was Deputy Martinez. R/P English claims that the search re-aggravated I/P Owens' knee injury, for which he was wearing a brace at the time.

**I/P James Owens**

James Owens told me that he was entering his fiancé's vehicle when he was detained by Deputies Cheshier and Pruitt. When Deputy Cheshier began to search him, he yelled for his fiancé, R/P English. He stated that she came out immediately. I/P Owens said that Deputy Cheshier kicked his legs apart when he was searching him, causing his knee to be injured. Deputy Cheshier then placed him into the backseat of the patrol vehicle. Deputy Cheshier then sat in the driver seat and ran I/P Owens on the MDT, as Deputy Pruitt spoke to his fiancé. I/P Owens said that while Deputy Cheshier was running him on the computer his fiancé told Deputy Pruitt to let him out of the vehicle, and that he did nothing wrong. After a few minutes, Deputy Pruitt came over and let him out of Deputy Cheshier's patrol vehicle as Deputy Cheshier continued to sit in the vehicle. I/P Owens stated that Deputy Cheshier did not exit his vehicle after this point and that Deputy Pruitt was the only deputy talking to him and R/P English. I/P Owens said that because of Deputy Cheshier's search technique's, his knee is now injured and that he sought the advice of an attorney.

**Deputies Casey Cheshier**

Deputy Cheshier told me that he responded to the location regarding a call of several males acting suspiciously in front of the location (tag 163). Upon arrival, Deputy Cheshier saw I/P Owens leaning into a vehicle as if he was retrieving something. Based on I/P Owens actions, Deputy Cheshier stopped and detained him pending further investigation. While Deputy Cheshier was conducting a cursory search of I/P Owens, I/P Owens yelled for his fiancé, R/P English. While searching I/P Owens, Deputy Cheshier learned that he had a knee brace on from a pre-existing injury. Deputy Cheshier paid special attention to I/P Owens knee injury and was cautious not to re-aggravate it. Deputy Cheshier had I/P Owens sit in the back seat of the patrol vehicle while he conducted his investigation. After learning that I/P Owens was not involved in any criminal activity he let him go. Prior to taking him out of the vehicle, Deputy Cheshier explained to I/P Owens why he was detained and even showed him the call for service on the MDT screen. I/P Owens appeared to be satisfied with Deputy Cheshier's actions and was not upset with the contact.

After Deputy Cheshier let I/P Owens out of the vehicle, he walked over to Deputy Pruitt who had been talking to R/P English on the sidewalk. Deputy Cheshier explained to her the situation and apologized for any inconvenience.

Deputy Cheshier submitted a detailed memorandum documenting the incident.

10

WCSCR #205595                           -3-                           January 4, 2008

### Deputy Adam Pruitt

Deputy Pruitt told me that he was driving behind Deputy Cheshier when they detained I/P Owens. He saw Deputy Cheshier begin to search I/P Owens, and as he was doing so, I/P Owens called for his fiancé, R/P English. As Deputy Cheshier searched I/P Owens Deputy Pruitt saw that he was careful not to cause him any discomfort. While Deputy Cheshier was walking I/P Owens to the back seat of the patrol vehicle, R/P English came out of the house at which time Deputy Pruitt contacted and spoke with her. He explained the reasons for detaining I/P Owens and she explained that it may have had something to do with her neighbors who were being loud outside their home earlier. After Deputy Cheshier was done running I/P Owens on the MDT, he immediately let I/P Owens out of the patrol vehicle and walked over to Deputy Pruitt and R/P English to explain to her the reasons for detaining I/P Owens. Both deputies left the location without further incident.

Deputy Pruitt submitted a detailed memorandum documenting the incident.

### Deputy Cristina Martinez

Deputy Martinez told me that she was assigned to assist Deputy Cheshier on the call for service. When she arrived, she saw that Deputy Cheshier had already detained I/P Owens and that he was sitting in the back seat of Deputy Cheshier's patrol vehicle. At no point did she have contact with either I/P Owens or R/P English.

Deputy Martinez submitted a detailed memorandum documenting the incident.

### FINDINGS AND CONCLUSION

After speaking to the all the parties involved, I have concluded that this complaint disposition should be, "Employee's conduct was reasonable." Deputy Cheshier was at the location for a call regarding males acting suspiciously in front of the location. Upon arriving, he saw I/P Owens leaning into a vehicle, therefore, he detained him to ascertain if he was involved in any criminal activity. Deputy Cheshier explained to I/P Owens why he was detained and Deputy Cheshier was cautious of the fact that I/P Owens had on a knee brace. I/P Owens immediately called for his fiancé to come out, which also led the deputies to believe that I/P Owens was involved in suspicious activity. I/P Owens was only detained for a very short time.

After talking to both R/P English and I/P Owens, there are several discrepancies and conflicting statements between them and the deputies version of the incident. R/P Owens first told me that she saw the entire incident, including the search, and the fact that Deputy Cheshier kicked I/P Owens legs apart. However, she told me that the deputy that searched him was named Martinez. When I told her that Deputy Martinez

WCSCR #205595          -4-          January 4, 2008

was a female, she then said that I/P Owens told her that the deputy that searched him, was a male. Based on her statements, I have concluded that she did not witness the initial detention and search of I/P Owens. There is no doubt that if she was to have witnessed the search, she would have noticed that it was a male deputy searching him.

Deputy Cheshier is tall and bald and Deputy Martinez is short with long dark hair and it is very clear by her appearance that she is in fact a female. By R/P English stating that

I/P Owens told her that it was a male deputy that searched her, makes it obvious that she did not witness the search. If she had witnessed the search she would not need I/P Owens to tell her about who searched her. Based on her conflicting statements, I feel that R/P English is being less that truthful about what actually transpired.

Additionally, I/P Owens gave conflicting statements about the deputies involved. He told me that one had dark hair, and one was bald. However, both Deputies Cheshier and Pruitt are bald and neither have dark hair. The only deputy with hair would have been Deputy Martinez and she had no involvement in the incident.

In my opinion, the deputies acted reasonable and well within departmental guidelines and policies.

Based on my investigation, I recommend that this complaint be closed and no further follow up is necessary.


PTB:ptb

Attachments:

WCSCR # 205595
Unit Details for units 35 and 35 T1
Memorandums written by Deputies Cheshier, Pruitt and Martinez