L. Trevor Grimm, State Bar No. 186801
Michelle B. Ghaltchi, State Bar No. 242482
MANNING & MARDER
KASS, ELLROD, RAMIREZ LLP
15th Floor at 801 Tower
801 South Figueroa Street
Los Angeles, CA 90017
Telephone: (213) 624-6900
Email: ltg@mmker.com, mbg@mmker.com

Attorneys for Defendants
COUNTY OF LOS ANGELES, DEPUTY CRISTINA MARTINEZ, DEPUTY CASEY CHESHIER and DEPUTY ADAM PRUITT

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES (JIM) OWENS,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF LOS ANGELES, DEPUTY MARTINEZ, DEPUTY SHESHIRE, DOES 1-10, inclusive,<br><br>Defendants. | Case No.: CV08-07116 DMG<br><br>*[Hon. Dolly M. Gee]*<br><br>**[PROPOSED] ORDER GRANTING DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT**<br><br>Date:     August 27, 2010<br>Time:    2:30 p.m.<br>Ctrm:    7<br><br>PTC:     September 27, 2010<br>Trial:     October 4, 2010 |

After reading and considering the papers filed in support of and in opposition to the motion of Defendants COUNTY OF LOS ANGELES, DEPUTY CRISTINA MARTINEZ, DEPUTY CASEY CHESHIER and DEPUTY ADAM PRUITT ("Defendants") for summary adjudication of issues on plaintiff's First Amended Complaint, and good cause appearing, IT IS HEREBY ORDERED THAT Defendants' motion for summary adjudication of issues is granted.

/ / /

/ / /

1

## FINDINGS OF FACT:

## SEPARATE STATEMENT OF MATERIAL UNCONTROVERTED FACTS

    a.    12/15/07 Incident

1. On December 15, 2007, at shortly after 11:00 p.m., Los Angeles County Sheriffs Department Lennox Station dispatch received a call from a resident of 4109 169th St. in Lawndale regarding suspicious males out in the street. Deputy Cheshier was assigned the call and responded to the location, followed by Deputies Pruitt and then Martinez.

EVIDENCE: Owens depo.: 18:2-7; Cheshier decl., ¶4-5; Pruitt decl., ¶4-5; Martinez decl., ¶4-6.

2. Upon his arrival, Deputy Cheshier observed plaintiff standing in the street, leaning into a vehicle and removing an item. Deputy Cheshier parked his patrol car approximately half a car length from the vehicle plaintiff was reaching into.

EVIDENCE: Owens depo.: 30:21-25, 91:13-23; Cheshier decl., ¶5-6.

3. He illuminated plaintiff with his spotlight and told him to put down whatever he had in his hands. Plaintiff complied with Deputy Cheshier's commands and dropped what he was holding.

EVIDENCE: Owens depo.: 29:15-19; Cheshier decl., ¶7.

4. Based on the call for service - males acting suspiciously in the street, the nature of the suspected crime - potential burglary or theft of the vehicle, the time of night - almost midnight, and the characteristically "high-crime/gang/narcotic" neighborhood they were in, Deputy Cheshier, for officer safety reasons, determined a pat down search for weapons on plaintiff's person would be appropriate under the circumstances. Plaintiff admits he considers his neighborhood to be a gang area and regularly sees Sheriff's Deputies patrolling the neighborhood.

EVIDENCE: Owens depo.: 7:3-11, 16:11-17:6, 92:23-93:14; Cheshier decl., ¶8.

5. Plaintiff asked "What's going on?" Deputy Cheshier told plaintiff that he would explain, but for officer safety, he needed to conduct a cursory search to make sure that he didn't have any weapons on him. Deputy Cheshier directed plaintiff to place his hands behind his back and interlace his fingers. Deputy Cheshier took control of plaintiff's hands and asked him to spread his feet shoulder width apart.

EVIDENCE: Owens depo.: 40:2-7, 40:16-19, 44:16-20, 45:11-46:1; Cheshier decl., ¶9-10.

6. As Deputy Cheshier began the search, plaintiff turned towards the house and yelled out to his girlfriend, who was inside the residence, requesting that she come outside. Deputy Cheshier tried to calm plaintiff down by explaining that he wasn't in trouble, but that he was conducting an investigation of a possible crime.

EVIDENCE: Owens depo.: 41:19-42-16; Cheshier decl., ¶11-12.

7. Plaintiff told Deputy Cheshier to be careful of his knee; he had received a cortisone injection that morning. Deputy Cheshier then conducted his pat down search of plaintiff.

EVIDENCE: Owens depo.: 45:17-46:1; Cheshier decl., ¶13.

8. Once Deputy Cheshier had completed the pat down search, he placed plaintiff in the backseat of his patrol car while he continued his investigation. Deputy Cheshier asked plaintiff his name and a series of questions related to the vehicle, its owner, and his purpose for withdrawing items from it. With the aid of his MDT unit, Deputy Cheshier was able to verify plaintiff's identification and his residence as 4147 169th Street. He was also able to determine the owner of the vehicle as plaintiff's girlfriend and immediately released plaintiff.

EVIDENCE: Owens depo.: 55:16-25, 59:20-60:15; Cheshier decl., ¶4.

9. Deputy Cheshier arrived at the location at 2336 and cleared the call at 2344, which indicates his entire involvement with this incident was less than 8 minutes.

EVIDENCE: Owens depo.: 63:8-64:3; Cheshier decl., ¶5; Exhibit A - Unit

3

History.

10. Deputy Pruitt also responded to the location at 169th Street that night. He pulled up and parked his vehicle behind Deputy Cheshier's patrol unit.

EVIDENCE: Owens depo.: 31:11-18; Pruitt decl., ¶5.

11. The only remark plaintiff alleges Deputy Pruitt made to him was after the detention, he said "have a good night." Deputy Pruitt did not touch plaintiff.

EVIDENCE: Owens depo.: 68:20-69:1, 76:6-11.

12. Deputy Martinez arrived at the location after plaintiff was already in detention. Deputy Martinez did not have any verbal or physical interaction with plaintiff. Additionally, plaintiff admits he did not even observe a third deputy that evening. Nor did he observe a female deputy.

EVIDENCE: Owens depo.: 29:20-22, 35:11-16, 84:6-20, 88:13-17; Martinez decl., ¶5-7.

13. Deputies Cheshier, Pruitt, and Martinez believed that their actions during this encounter were reasonable and justified under the circumstances and did not violate any clearly established law.

EVIDENCE: Cheshier decl., ¶16; Pruitt decl., ¶6; Martinez decl., ¶8.

b. **Plaintiff's Complaint Unsubstantiated**

14. On December 16, 2007, plaintiff's wife [then girlfriend], Nancy English filed a personnel complaint, via telephone, with the Lennox Sheriff's Station alleging that deputies detained plaintiff for no reason, plaintiff should have been released when they learned he lived at the location, and that she saw Martinez search plaintiff and kick his legs apart. Her complaint was investigated by Lieutenant Patrick Bearse.

EVIDENCE: Owens depo.: 71:6-72:2, 72:16-23, 74:5-8; Bearse decl., ¶5, Exhibit A - Watch Commander's Service Comment Report.

15. After interviewing Ms. English, plaintiff, Deputy Cheshier, Deputy Pruitt and Deputy Martinez and reviewing all available information in this case, it was

determined that the deputies' conduct on December 15, 2007, with regards to the incident involving plaintiff was within the Sheriff's Department's Manual of Policies and Procedures. There were several discrepancies and conflicting statements between plaintiff and Ms. English's version of the events, which were inconsistent in and of themselves. Further, it was determined the deputies did not violate any rules, regulations or laws. Supervision on duty at the time of the incident acted prudently and within the Department's policies and procedures. On January 4, 2008, Lt. Bearse reported his findings in a memorandum to Captain Kevin Goran. There was no discipline imposed, and the complaint was closed.

EVIDENCE: Bearse decl., ¶6, Exhibit B - January 4, 2008 Memorandum to Captain Goran.

### c. Los Angeles County Policies

16. The Los Angeles County Sheriff's Department has policies and procedures regarding: (1) use of force; (2) reporting, honesty in reporting, and investigation of incidents; (3) investigation of misconduct; (4) hiring, supervision, discipline and training of personnel; (5) citizens' constitutional rights. There is no Department policy or procedure authorizing: unreasonable searches or seizures; inadequate, fraudulent or misleading investigation of incidents; inadequate or fraudulent investigation of officer misconduct; unreasonable or unconstitutional uses of force; inadequate or derelict supervision, training or discipline of officers; interference with citizens' constitutional rights.

EVIDENCE: Bearse decl., ¶7.

17. The Los Angeles County Sheriff's Department does not maintain, enforce, tolerate, permit, acquiesce in or create any customs, policies or practices of subjecting citizens to unreasonable searches and seizures, denying citizens due process of law, denying citizens of equal protection under the law or depriving citizens of liberty without reasonable suspicion and probable cause.

EVIDENCE: Bearse decl., ¶8.

18. The Los Angeles County Sheriff's Department trains all of its deputies how to effect searches and seizures in compliance with the Fourth Amendment to the United States Constitution. This training is in accordance with the guidelines promulgated by the California Commission on Peace Officer Standards and Training ("P.O.S.T"). P.O.S.T. was established by the Legislature in 1959 to set minimum selection and training standards for California law enforcement. Before being assigned to patrol, each deputy is required to attend 18 weeks of training at the Los Angeles County Sheriff's Academy. At the academy, all deputies undergo both classroom and situational training so that they are knowledgeable about what constitutes reasonable suspicion to detain, and probable cause to arrest, citizens who violate the law. Approximately 16 hours of the academy training is devoted to laws relating to searches and seizures. P.O.S.T requires a minimum of 12 hours of training in this area. Upon their first field assignment, each new deputy is assigned for a period of six months to an experienced field training officer who provides further training in how to effect lawful detentions and arrests.

EVIDENCE: Bearse decl., ¶9.

19. The Los Angeles County Sheriff's Department does not maintain, enforce, tolerate, permit, acquiesce in or create any customs, policies or practices of selecting, hiring or retaining officers known to have propensities for using excessive force or committing other misconduct; failing to train, supervise or control its officers; failing to discipline its officers who committed misconduct; condoning, encouraging or ratifying misconduct on the part of its deputies; or of leading its deputies to believe that there would be no adverse employment consequences if they committed misconduct.

EVIDENCE: Bearse decl., ¶10-13

20. All Los Angeles County Sheriff's deputies are provided with a policy manual which specifically sets forth the grounds for discipline, and the nature and extent of that discipline. Unlawful searches and/or seizures are grounds for

discipline at the Los Angeles County Sheriff's Department, and its deputies are informed of that fact. When citizens complain about misconduct, including unlawful searches and seizures, by deputies, those complaints are investigated and, if warranted, deputies are disciplined.

EVIDENCE: Bearse decl., ¶14.

21. Plaintiff filed a government tort claim on March 11, 2008.

EVIDENCE: Ghaltchi decl., ¶3, Exhibit A - Plaintiff's Government Tort Claim.

## ISSUES OF LAW

1. The first federal claim against Deputies Pruitt and Martinez for violation of civil rights under 42 U.S.C. § 1983 - Excessive Force - lacks merit because neither Pruitt nor Martinez detained, patted down, or touched plaintiff, and, therefore, could not have used excessive force.

**Facts**                                                                 **Evidence**

Defendants incorporate by reference herein as though set forth in full the facts and supporting evidence of Undisputed Facts Nos. 1-21.

2. The first federal claim against Deputies Pruitt, Martinez, and Cheshier for violation of civil rights under 42 U.S.C. § 1983 - Detention Without Reasonable Suspicion - also lacks merit because the detention and pat-down of plaintiff were objectively reasonable. Deputy Cheshier had reasonable suspicion to detain plaintiff and the pat down for weapons was objectively reasonable, thereby entitling him to qualified immunity. *Graham v. Connor*, 490 U.S. 386 (1989). Even assuming, arguendo, that plaintiff could show a constitutional violation, any mistakes of fact or law the officer may have made were reasonable, and, therefore, he is entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 200 (2001).

**Facts**                                                                 **Evidence**

Defendants incorporate by reference herein as though set forth in full the facts and supporting evidence of Undisputed Facts Nos. 1-21.

7

3. The second federal claim for supervisory liability against Deputies Cheshier, Pruitt, Martinez, and DOES 2-5 fails because there are no named supervisor defendants and plaintiff cannot demonstrate that any defendant participated in or directed the alleged constitutional violations, or knew of the violations of subordinates and failed to act to prevent them.

**Facts**                          **Evidence**

Defendants incorporate by reference herein as though set forth in full the facts and supporting evidence of Undisputed Facts Nos. 1-21.

4. The third and fourth federal claims under *Monell* and *Canton* fail because plaintiff cannot establish a constitutional violation and there is no evidence that a County policy, practice or custom caused a violation of plaintiff's civil rights. *Monell v. Department of Soc. Serv.*, 436 U.S. 658 (1978).

**Facts**                          **Evidence**

Defendants incorporate by reference herein as though set forth in full the facts and supporting evidence of Undisputed Facts Nos. 1-21.

5. The redundant state claims for battery (fifth claim), intentional infliction of emotional distress (sixth claim), violation of Civil Code §52.1 (seventh claim), and negligence (eighth claim) lack merit because all the claims arise from the December 15, 2007 incident, and for the same reasons that no constitutional violations were committed, no state torts were committed, either. *Martinez v. County of Los Angeles*, 47 Cal. App. 4th 334, 349-50 (1996). In addition, plaintiff's failure to include intentional infliction of emotional distress and violation of Civil Code §52.1 in his government tort claim bars these state claims.

**Facts**                          **Evidence**

Defendants incorporate by reference herein as though set forth in full the facts and supporting evidence of Undisputed Facts Nos. 1-21.

6.  Because the deputies cannot be liable on the state claims, there is no basis for respondeat superior liability against the County of Los Angeles. Government Code §815.2.

**Facts**                                              **Evidence**

Defendants incorporate by reference herein as though set forth in full the facts and supporting evidence of Undisputed Facts Nos. 1-21.

## CONCLUSIONS OF LAW

1.  The first federal claim against Deputies Pruitt and Martinez for violation of civil rights under 42 U.S.C. § 1983 - Excessive Force - lacks merit because neither Pruitt nor Martinez detained, patted down, or touched plaintiff, and, therefore, could not have used excessive force. (Uncontroverted Facts Nos. 1-21.)

2.  The first federal claim against Deputies Pruitt, Martinez, and Cheshier for violation of civil rights under 42 U.S.C. § 1983 - Detention Without Reasonable Suspicion - also lacks merit because the detention and pat-down of plaintiff were objectively reasonable. Deputy Cheshier had reasonable suspicion to detain plaintiff and the pat down for weapons was objectively reasonable, thereby entitling him to qualified immunity. *Graham v. Connor*, 490 U.S. 386 (1989). Even assuming, arguendo, that plaintiff could show a constitutional violation, any mistakes of fact or law the officer may have made were reasonable, and, therefore, he is entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). (Uncontroverted Facts Nos. 1-21.)

3.  The second federal claim for supervisory liability against Deputies Cheshier, Pruitt, Martinez, and DOES 2-5 fails because there are no named supervisor defendants and plaintiff cannot demonstrate that any defendant participated in or directed the alleged constitutional violations, or knew of the violations of subordinates and failed to act to prevent them. (Uncontroverted Facts Nos. 1-21.)

9

4. The third and fourth federal claims under *Monell* and *Canton* fail because plaintiff cannot establish a constitutional violation and there is no evidence that a County policy, practice or custom caused a violation of plaintiff's civil rights. *Monell v. Department of Soc. Serv.*, 436 U.S. 658 (1978). (Uncontroverted Facts Nos. 1-21.)

5. The redundant state claims for battery (fifth claim), intentional infliction of emotional distress (sixth claim), violation of Civil Code §52.1 (seventh claim), and negligence (eighth claim) lack merit because all the claims arise from the December 15, 2007 incident, and for the same reasons that no constitutional violations were committed, no state torts were committed, either. *Martinez v. County of Los Angeles*, 47 Cal. App. 4th 334, 349-50 (1996). In addition, plaintiff's failure to include intentional infliction of emotional distress and violation of Civil Code §52.1 in his government tort claim bars these state claims. (Uncontroverted Facts Nos. 1-21.)

6. Because the deputies cannot be liable on the state claims, there is no basis for respondeat superior liability against the County of Los Angeles. Government Code §815.2. (Uncontroverted Facts Nos. 1-21.)

7. Pursuant to FRCP 56 and *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (U.S. 1986), defendants are entitled to judgment as a matter of law on the federal and state claims, except for excessive force as against Deputy Cheshier.

IT IS FURTHER ORDERED THAT:

Defendants' motion for summary adjudication of issues is granted. Defendants are to prepare a proposed judgment.

IT IS SO ORDERED.

Dated:                                    By:_____
                                          UNITED STATES DISTRICT JUDGE